In Re: Nomination Papers of Gerald R. Carlson as the Candidate of a Political Body for the Office of Representative in the United States House of Representatives.

David B. Glancey, Petitioner.

Heard June 11, 1981, by President Judge CRUM-
LISH.

*Joseph H. Huston, Jr., Morgan, Lewis & Bockius,*
with him *Alan C. Kessler,* for petitioner.

*Gerald R. Carlson,* for himself, respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, June 19,
1981:

David B. Glancey, Democratic Party Candidate for
United States Representative from Pennsylvania's
Third Congressional District, contests the nomination
papers of White Majority Party candidate Gerald R.
Carlson. After a hearing and extensive review of the
law and record, we set aside the challenged nomina-
tion papers.[1]

In response to a Special Election called to fill the
Congressional seat vacated by former Representative

---

[1] At the outset of the hearing, Carlson moved for dismissal of
the action and, in the alternative, motioned for a continuance. Since
time is of the essence in this election case and substantial questions
of law and fact are at issue, we denied both motions.

Raymond F. Lederer, Gerald Carlson circulated nomination papers as a candidate of the political body "White Majority Party", which were filed with the State Bureau of Elections on June 1, 1981. At issue in this case is whether Carlson has properly secured a position on the ballot for U.S. Congressman by satisfying both Federal and State requirements. We conclude that he has not.

The United States Constitution, Article I, Section 2, Clause 2, provides that "[n]o person shall be a Representative . . . who shall not, when elected, be an Inhabitant of the State in which he shall be chosen." We dispute Carlson's Pennsylvania inhabitancy. However, we note that the Constitution speaks ex post facto, and it is for the Congress to judge a newly-seated Congressman's qualifications *after* his election. See *Barry v. United States,* 279 U.S. 597 (1928); *Chavez v. Evans,* 79 N.M. 578, 446 P.2d 445 (1968).

Glancey directs our attention to Carlson's failure to comply with Section 952 of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2912, which requires that all nomination papers specify, among other things, the name of the candidate, his profession, his place of residency, and the names and addresses of at least three persons to act as a committee and who are authorized to fill vacancies. Carlson's grievous failure to properly and truthfully complete his nomination papers compels us to set aside his papers and strike his name from the ballot.

On his nomination papers, circulator's affidavits, and on his Candidate's Affidavit and Loyalty Oath, Carlson listed and swore that his residence was either 1812 Frankford Avenue or 2007 E. Susquehanna Avenue, Philadelphia.[2] From both evidence developed at the hearing and Carlson's prior political activity, we

---

[2] Carlson allegedly changed his address during the time he was circulating his nomination papers.

conclude that Carlson was not a "resident" of either address listed on his nomination papers in any valid sense of the word.

The record reveals that on February 17, May 19, and May 30, 1981, Carlson filed Affidavits of Identity with the State of Michigan to run in elections for U.S. Congressman, 4th District, State Representative, and U.S. Congressman, 15th District, respectively. In all these affidavits Carlson listed a Michigan residence and stated he had resided in Michigan for 38 years. How then could he list two Philadelphia residences on the nominating papers which he began to circulate in Pennsylvania on May 22, 1981?

When asked by the Court at the hearing whether he intended to make Philadelphia his permanent residence, Carlson responded that he "might" and that it was not completely out of the question. From the totality of the circumstances and evidence, the only possible answer is that Carlson falsely represented himself to the signers of his nominating papers as a Philadelphia resident when in fact he had stated in Michigan, both before and after he began to circulate the nominating papers, that he was a Michigan resident for some 38 years. We can only conclude that Carlson has not established a Pennsylvania residence where he intends to return and remain.

Carlson's nominating papers are further tainted by his failure to specify a committee of at least three persons as required by the Election Code. This is not a mere technicality but is required by our Legislature as one indication that a candidate is backed by a political body and is mounting a serious candidacy, with the aim of representing a constituency's views in the Congress.[3]

---

[3] We also note that Carlson further misrepresented himself to those who signed his nominating papers by listing as his occupation

We conclude that the totality of Carlson's conduct compels us to set aside his nomination papers. The United States Supreme Court has explicitly recognized that states have a compelling interest in preserving the integrity of the electoral process and in regulating the number of candidates appearing on the ballot. *American Party of Texas v. White,* 415 U.S. 767 (1974). It is clear that the provisions of the election law regulating nomination papers and affidavits are not mere technicalities but necessary measures to prevent fraud and preserve the integrity of the election process. *In re Petition of Cianfrani,* 467 Pa. 491, 359 A.2d 383 (1976).

We are entrusted with the responsibility of protecting the Commonwealth's compelling interest in preserving the integrity of the election process. Recognizing the right of citizens who are not affiliated with a political party to run for office, our Legislature has established rigid procedures for nomination and election of candidates of political bodies.

Record evidence amply demonstrates that Carlson has failed to scrupulously adhere to the tenets of the Election Code. We are compelled to conclude that Carlson's only aim is to gain a seat in Congress to expose his personal political viewpoints, not to represent a bona fide political body with an active constituency. Carlson has misrepresented himself to the signers of his papers as a resident of the Commonwealth and as a candidate of an apparently nonexistent political body. We cannot condone such an abuse of the electoral process and therefore set aside Carlson's nominating papers.

Date: June 19, 1981

---

"private detective". At the hearing, Carlson testified that he has not worked as a private detective recently, has no license and in fact considers "political activism" as his profession.

ORDER

After careful consideration, Gerald R. Carlson's Motion For Continuance is denied.

Date: June 19, 1981

ORDER

After careful consideration, Gerald R. Carlson's Motion to Dismiss is denied.

Date: June 19, 1981

ORDER

The Petition of David B. Glancey to set aside the nomination papers of Gerald R. Carlson as the candidate of a political body for the office of United States Representative, from the Third Congressional District of Pennsylvania in the special election to be held July 21, 1981, is granted. The Secretary is directed not to print his name as a candidate for such office on the ensuing special election ballot.

The cost of the notes of stenographic testimony are to be borne equally by the parties.