Scott M. Wilds et al., Petitioners *v.* Secretary of the Commonwealth of Pennsylvania, Respondent and Marvin E. Schuman and Jeffrey D. Moran, Intervenor-Respondents.

Heard March 19, 1984, by Judge COLINS.

*Mark L. Alderman,* with him *Andrew A. Chirls, Wolf, Block, Schorr & Solis-Cohen,* for petitioners.

*Gregory M. Harvey,* for intervenor-respondents.

OPINION BY JUDGE COLINS, April 2, 1984:

The petitioners, Scott M. Wilds, Suzanne Badoux, David Livingston, Donna Livingston, Francis E. Gleeson, Jr. and John J. Hughes, are candidates in the April 10, 1984 Pennsylvania Primary Election for the position of delegate to the Democratic National Convention.[1] They have filed an Application for Immediate Peremptory Mandamus with this Court to require the Secretary of the Commonwealth, the respondent, to certify their statements setting forth their intentions to now support the candidacy of Senator Gary Hart for President of the United States.

The petitioners were previously certified to the Philadelphia County Board of Elections, pursuant to Section 2876 of the Election Code,[2] as supporters of Senator Alan Cranston or former Governor Reubin Askew. Since Senator Cranston and former Governor Askew have withdrawn from the presidential race and have released the petitioners pledged to them from their commitments, the petitioners have filed new Delegate Statements reflecting their intentions to now support Senator Gary Hart. The respondent Secretary has informed the petitioners that he refuses to recognize the validity of these Delegate Statements and that he refuses to certify these statements to the Board of Elections of Philadelphia. Therefore, the petitioners have filed this Petition for Peremptory Mandamus.

The petitioners argue that there is no provision of the Election Code which establishes a deadline beyond which the submission of a Delegate's Statement of presidential allegiance is invalid and that they are,

---

[1] Mr. Wilds and Ms. Badoux are candidates for this position from the Second Congressional District; the remaining petitioners are candidates for this position from the Third Congressional District.

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §2876.

therefore, entitled to have the Secretary certify their new statements to reflect their true presidential preference. This argument, however, is without merit. The Election Code specifically provides that "[n]omination petitions in the case of candidates . . . for the office of . . . delegate to National party conventions . . . shall be filed with the Secretary of the Commonwealth",[3] and that "[a]ll nomination petitions shall be filed on or before the tenth Tuesday prior to the primary"[4] which was January 31, 1984.

The Pennsylvania Delegate Selection Plan for the 1984 Democratic National Convention,[5] relying on the Election Code, states that "the first date for circulating nominating petitions is January 10, 1984." Also, it states that the Presidential Candidates, having received from the State Democratic party, the list of individuals who desire to be candidates for committed delegate, shall

> notify the Secretary of the Commonwealth, the Pennsylvania Democratic State Committee, and each individual who has submitted a request to be designated a committed delegate or alternate delegate by the said Presidential candidate by *no later than January 13, 1984, so that the respective candidates who have not been accepted by the said Presidential candidates may file as*

---

[3] 25 P.S. §2873(a).

[4] 25 P.S. §2873(d).

[5] The Delegate Selection Plan provides the procedures for the selection of 195 delegates and 65 alternates from Pennsylvania to the 1984 Democratic National Convention.

. . .

The delegate election process is governed by the Delegate Selection Rules for the 1984 Democratic National Convention, the Regulations of the Compliance Review Commission, the rules of the Pennsylvania Democratic State Committee, the state election code and this Delegate Selection Plan.

*uncommitted delegate candidates* or alternate candidates. (Emphasis added.)

In effect, the petitioners are trying to file a new and different commitment with the Secretary of the Commonwealth, and support Senator Gary Hart. Not only is the effort by the petitioners untimely, but it is also violative of Section 2936(b) of the Election Code. This section states that "[n]o nomination petition, nomination paper or nomination certificate shall be permitted to be filed if it contains material alterations made after signing without the consent of the signers."

The nomination petitions filed by the petitioners contained a Delegate or Alternate Delegate's Statement, immediately under the delegate candidate's name and identification of the presidential candidate to whom committed and immediately above the formal introductory text, reciting that the

> undersigned . . . qualified electors shall petition the Secretary of the Commonwealth to have the candidate whose name . . . [is] set forth above, and who has declared that, if elected and in attendance as a delegate or alternate delegate to the National Convention . . . shall with all fidelity to the best judgment and ability in all matters coming before the convention, support the candidate for president of the United States whose name is set forth above . . . , to be printed on the official Presidential Primary Ballot. . . .

The purpose of requiring that the Delegate's Statement be on each nomination petition form, and "be signed on all the sheets of said petition, together with the date of signing . . ."[6] is that the electors who are requested to sign the nomination petition will be aware of the potential of the delegate's commitment,

---

[6] 25 P.S. §2871.

if he has declared one, prior to their signing the nomination petition. Therefore, the signers of the nominating petitions indicated not only that they were endorsing each petitioner for delegate to the convention, but also that they supported a specific candidate. The fact that the petitioners now wish to use the same nominating petitions to support Senator Hart is a material alteration made after the signing and without the consent of the signers. Some of the signers of the nominating petitions may not wish to support Senator Hart and may not have signed these petitions if they had known that the candidates for delegate they endorsed were committed to him. It is impossible for this Court to know what was in the minds of the individual electors.

The time limits set forth in the Election Code and Party Rules are not unreasonable. The petitioners had the same amount of time as any other candidate for delegate to commit themselves to a particular presidential candidate and obtain his authorization, or to remain uncommitted. Therefore, the petitioners cannot now claim that the failure of this Court to grant their Petition for Mandamus would cause them irreparable harm and that they should now be entitled to have the ballot changed to reflect their new presidential preference.

To allow candidates to be able to whimsically switch allegiances after the filing deadline would in effect open up a Pandora's box. "We are entrusted with the responsibility of protecting the Commonwealth's compelling interest in preserving the integrity of the election process." *In re: Nomination Papers of Carlson*, 60 Pa. Commonwealth Ct. 170, 174, 430 A.2d 1210, 1212 (1981), *aff'd*. 494 Pa. 139, 430 A.2d 1155 (1981).

Accordingly, we deny the petitioners' Application for Immediate Peremptory Mandamus.

34

ORDER

AND Now, this 19th day of March, 1984, after an evidentiary hearing held thereon, Petitioners' Application for Immediate Peremptory Mandamus is hereby denied.