DISSENTING OPINION BY
Judge COHN JUBELIRER.
I," respectfully, disagree that the ability to nominate a candidate of one’s choice, which requires the signing of a nomination petition, does not implicate an individual’s constitutionally protected right to vote. “There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth,” or in modern times, to *266 check a box on a voting machine. South v. Peters, 339 U.S. 276, 279, 70 S.Ct. 641, 94 L.Ed. 834 (1950) (Douglas J., dissenting). State laws concerning the eligibility of candidates “inevitably affects — at least to some degree — the individual’s right to vote and his right to associate with others for political ends.” Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). While individuals are always free to write-in a candidate of their choosing on election day, this country’s two-party political system is designed in such a way that' degrading the ability of citizens to nominate a candidate of their choosing for the political party for which they are a member effectively diminishes their right to vote. Without the ability to nominate a candidate, the right to vote can become a meaningless affirmation of a choice made by others. I, therefore, believe that the protections of the federal laws which protect the right to vote must also apply to the ability to nominate individuals for whom the right to vote can be exercised. Because I believe, with the advent of the SURE system, that a different balance could protect against fraud in the electoral process without disenfranchising otherwise qualified electors, I must respectfully dissent to the Majority’s well-written and thorough opinion.
Section 908 of the Election Code requires all signers of nomination petitions to “add his residence, giving city, borough or township, with street and number, if any....” 25 P.S. § 2868. Applying this provision of the Election Code has challenged the courts. The courts must, on the one hand, vigilantly protect the franchise and remain cognizant that “any restrictions” on “[t]he right to vote freely for the candidate of one’s choice ... strike at the heart -of representative government.” Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). On the other hand, the courts must be ever-mindful that the Commonwealth “has an interest, if not a duty, to protect the integrity of its political processes ...” Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). Accordingly, the courts of this Commonwealth have long been entrusted to balance these dual objectives by both construing the Election Code liberally “so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice,” Nomination Petition of Ross, 411 Pa. 45, 190 A.2d 719, 720 (1963), and by “protecting] the Commonwealth’s compelling interest in preserving the integrity of the election process.” In re Nomination Papers of Carlson, 60 Pa.Cmwlth. 170, 430 A.2d 1210, 1212 (1981) (Crumlish, J., single judge op.).
In In re Nomination of Flaherty, 564 Pa. 671, 770 A.2d 327 (2001), our Supreme Court was confronted with balancing these dual interests when it addressed a nomination petition of a candidate seeking to be placed on the ballot for judge on this Court. The nomination petition at issue included 16 signatures of electors that listed addresses that did not match the addresses stated on the voters’ respective voter registration cards. The Court looked to the Voter Registration Act in effect at the time, which provided that voters who moved within the county could not vote in elections unless they notified the authorities of their new address no later than 30 days preceding an election,[1] and held that “absent extraordinary circumstances, electors who declare a residence at an address different than the *267 address listed on their voter registration card are not qualified electors at the time theys sign a nomination petition unless they have completed the removal notice required by the Voter Registration Act.” Flaherty, 770 A.2d at 333.
More recently, this Court has employed a more forgiving interpretation of the Election Code in the context of federal elections. See, e.g., In re Nomination Payers of Robertson (Pa.Cmwlth. No. 507 M.D. 2012, filed September 20, 2012), slip op. at 13.[2] Because Flaherty addressed only state elections and relied on the text of a Voter Registration Act that had been repealed, the Court looked to federal law and held that “the mere fact that the address [listed on a voter registration card] does not match [the address written on the nominating papers] does not invalidate the signature.” Robertson, slip op. at 13. According to the Court:
[T]he Election Code requires only that the signer write his current residence address and does not state that he must write the address at which he is registered or that his present residence must match his registered address.- Where the Election Code -does not affirmatively require that information on a nomination petition or paper match the voter registration record and the differences does not compromise the integrity of the election process, signatures cannot be stricken, based on a difference from the voter registration records.
Robertson, slip op. at 25T26. The Court’s reasoning also relied, in no small part, on the fact that the SURE system was created by statute after Flaherty was decided. Section 1222 of the Election Code, 25 Pa.C.S. § 1222.[3] The Court noted that '
while voter registration records were once searched by address in hard copy volumes, address is no longer essential for searching whether signers are registered voters_ The SURE' system permits electronic searching by name and permits signatures to be pulled up for comparison from a - name search without inputting address information.
Robertson, slip op. at 28 (emphasis added).
Balancing the competing concerns at issue in these cases is complicated. It is not surprising, then, that this Court’s jurisprudence has not been entirely consistent on the issue of whether a signature of a person who lists an address different than that on record in the SURE system is valid. Compare In re Payton, 945 A.2d 279, 286 n. 3 (Pa.Cmwlth.) review denied, order aff'd, 596 Pa. 469, 945 A.2d 162 (2008) abrogated on other grounds by In re Stevenson, 615 Pa. 50, 40 A.3d 1212 (2012) (not striking signature lines that listed their residences with addresses in the district even though the addresses differed from the registration addresses); In re Nomination Petition of Brown, 846 A.2d 783, 787 (Pa.Cmwlth.2004) (not allowing amendment to addresses listed on a nomination petition because “to do so would be pointless” given that different addresses within- the political district had “no legal effect on the signers’ status as a qualified and registered elector”); with In re Nomination Petition of Vodvarka, 994 A.2d 25, 30 (Pa.Cmwlth.2010) (Leavitt, J.,. single judge op.) (applying Flaherty’s “extraordinary circumstances” test); In re Nomination Petition of White (Pa.Cm.wlth., No. *268 446 C.D. 2015, 2015 WL 5435610, filed April 17, 2015) (Cohn Jubelirer, J., single judge op.), slip op. at 13 (applying Flaherty’s “extraordinary. circumstances” test and holding that a recent move within a district is an extraordinary circumstance that allows for the introduction of curative evidence).
It appears that the Supreme Court has similarly struggled to provide this Court with consistent guidance on this issue, at least as it concerns federal elections. In In re Nomination Petition of Gales, 618 Pa. 93, 54 A.3d 855, 861 (2012), the Supreme Court cited its Flaherty decision favorably in the context of a state, election primary.- The following week, the Supreme Court re-affirmed its holding in Flaherty in In re Lunny, 615 Pa. 460, 44 A.3d 1, 2 (2012), where it reversed this Court’s decision to not strike signatures on a nominating petition for state office that listed an address other than the one provided on the voter registration card. However, when the Supreme Court addressed Robertson on appeal six months later, and was confronted with the same issue- in the context of a federal election, the Court did not comment on this Court's decision to not strike the signatures or disturb Robertson’s holding in this regard. In re Robertson, 618 Pa. 150, 55 A.3d 1044, 1044-45 (2012) (reversing this Court’s opinion only “to the extent that it ordered that the signatures unaccompanied by a designation of the year of signing must be stricken from the nomination papers”).
In the face of this uncertainty, and given that the “overriding policy in this Commonwealth to protect the elective franchise,” Petition of Cioppa, 533 Pa. 564, 626 A.2d 146, 148 (1993), I strongly believe that this Court should, within the bounds of the- law, err on the side of including, rather than excluding, all citizens in the electoral process. I fear that, in' its balance of the dual mandates of the Election Code, the Majority’s holding will have a deleterious effect on the right to vote of disadvantaged citizens and those not traditionally politically active. Those who rent a residence, do not drive a vehicle, and those who reside in assisted living facilities, student housing, public housing, shelters, and group homes aire more likely to reside at an address that differs from the address listed on their voter registration cards. Striking signatures of those who list an in-county address on a nomination petition that differs from the address listed on the SURE system, when the signatures would 'otherwise be consistent with the voter registration cards, degrades the electoral power of these citizens. And, as Chief Justice Warren stated in the landmark Reynolds v. Sims decision, “[t]o the extent that a citizen’s right to vote is debased, he is that much less a citizen.” Reynolds, 377 U.S. at 567, 84 S.Ct. 1362.
I believe the correct balance, which is supported by the our case law and the purposes of Section 908 of the Election Code, is to follow the approach outlined- in Robertson and to not strike a signature where the only defect is that the elector, is registered at a different address within the same county than the in-county address written on the nomination petition. Because the fact that an elector moves within the county without immediately updating voter registration information, by itself, does not render the elector unqualified to vote, it should likewise not render the elector unqualified to sign a nomination petition, so long as the signature is consistent with the signature on the registration card. Moreover, not striking such signatures does not-violate the integrity of the electoral system as an elector’s identity can be confirmed by matching the signature on the SURE system.- By using the SURE system, an individual who signs a nomination petition can be searched by *269 first and last name and .the. individual’s identity can be verified by examining the signature found in the system. While listing an address that matches that on an elector’s voter registration card may have been integral to prevent fraud in the past, with the advent of the SURE system, this is no longer required. I would, therefore, hold that because Objector has not proffered any defect to the challenge of 461 signature lines other than the fact that the addresses listed do not match the electors’ .voter registration card, Objector has failed to meet his burden.
I agree with the Majority’s well-reasoned conclusion that the signatures of the electors that listed their mailing addresses instead of their municipality on the Nomination Petition are valid. The Majority’s approach to this issue is consistent with case law and strikes the appropriate balance between protecting the franchise and preventing fraud. However, for the reasons set forth above, I must respectfully dissent from the majority opinion in .this case.
Judge MeCULLOUGH joins in this dissent.

. 25 Pa.C.S. §§ 961.901-961.902, repealed by the Act of January 31, 2002, P.L. 18, No. 3, § 5(2).

, Pursuant to Section 414 of the Commonwealth Court Internal Operating Procedures, unreported opinions of a panel of the Commonwealth Court, if issued after January 15, 2008, may be cited for “persuasive value, but not as binding precedent.” 210 Pa.Code § 69.414(a).

. Added by Section 4 the Act-of May 16, 2002, P.L. 310, No. 44.