# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of      :
Gary Masino      :
     :
Petition of Maria Grimes Santilli and      :
Donna Bond      :    No. 319 C.D. 2023
     :    Submitted: April 7, 2022

**BEFORE:     HONORABLE RENÉE COHN JUBELIRER,** President Judge

**OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**        **FILED: April 12, 2023**

Maria Grimes Santilli and Donna Bond (Objectors) appeal from the Order of the Court of Common Pleas of Philadelphia County (common pleas) docketed March 27, 2023, denying their Petition to Set Aside (Petition to Set Aside) the Nomination Petition of Gary Masino (Candidate) in which he seeks to be the Democratic nominee for the City of Philadelphia's City Council for the 10th District. On appeal, Objectors argue common pleas erred and/or abused its discretion by not treating their challenges to certain signature lines, coded as "Not Registered at Address" (NRA) on common pleas' "Election Spreadsheet" (spreadsheet), as encompassing a challenge to those electors not being registered in the Democratic Party. Alternatively, they argue common pleas erred and/or abused its discretion in not allowing them to amend their Petition to Set Aside to include that challenge. Finally, Objectors argue common pleas erred and/or abused its discretion in quashing subpoenas they issued to two circulators of multiple pages of Candidate's Nomination Petition based on common pleas' conclusion that the circulators' testimony was not relevant to the objections raised. Upon careful review, the Court

concludes common pleas erred in not allowing Objectors to amend their objections to signature lines, already challenging the signers' registration status, to include an objection that the electors were not registered in the Democratic Party, and abused its discretion in quashing Objectors' subpoenas. Accordingly, the Court is constrained to vacate common pleas' Order and remand for further proceedings consistent with this opinion.

## I.    PROCEEDINGS BEFORE COMMON PLEAS

Candidate filed a Nomination Petition to run as a candidate to be the Democratic nominee for the City of Philadelphia's City Council for 10th District in the May 2023 Municipal Primary Election (Primary Election). Objectors filed the Petition to Set Aside challenging Candidate's Nomination Petition on the basis that Candidate failed to obtain the 750 valid signatures of registered members of Candidate's party to have his name appear on the Primary Election ballot. Relevant to the issues in this appeal, Objectors challenged hundreds of signature lines as invalid under the NRA code. Many of those signature lines were also challenged on other grounds. Other signature lines were challenged on the basis they were either bad signatures, *i.e.*, the signature on the Nomination Petition did not match the signature in the Statewide Uniform Registry of Electors (SURE) system, or the line information was written in the hand of another.

Following efforts by Objectors and Candidate to meet and confer over the disputed signature lines, and after the seven-day period to file objections to nomination petitions had expired, it was discovered during this process that many of the signature lines challenged as NRA were registered electors at the listed address but were not registered electors of the Democratic Party at the address. (Motion to Amend the Petition to Set Aside Nomination Petition (Motion to Amend), Original

2

Record (O.R.) at Item 7.) Objectors filed the Motion stating, "[i]n reviewing the nomination petitions in question [Objectors] reviewed a list of all of the Democratic voters in the 10th Council District, the only ones who would have been eligible to sign nomination petitions for that district." (*Id.* ¶ 2.) A number of signers were found not to be on the list, and many challenges to these were identified as NRA on the spreadsheet. Objectors stated in the Motion to Amend that while "Candidate agreed that the [electors] were not eligible to sign," he would not stipulate to striking the signatures. (*Id.*) Objectors requested common pleas to strike these signature lines on this basis, as the electors were not qualified to sign the Nomination Petition or, alternatively, to allow Objectors to amend the Petition to Set Aside to include a challenge to the electors because they were not registered in the Democratic Party. Objectors argued in their supporting brief the NRA code should be inclusive of this challenge because it gave Candidate adequate notice that he would have to defend those electors' registration status, which became clear during the meet and confer. Alternatively, Objectors asked to amend the Petition to Set Aside to include the challenge based on political party registration, because they were not asserting new factual averments, but additional legal arguments as to why the challenged signature lines were invalid, and Candidate had notice that he would have to defend these signature lines.

Candidate filed a brief opposing the Motion to Amend, arguing the Pennsylvania Election Code[1] (Election Code) did "not permit challenge-by-ambush," requires objections to nomination petitions to "specifically set[ ]forth the objections thereto," and requires objections to be filed within the seven-day time period set forth in the Election Code. (Candidate's Brief in Opposition to Motion to

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

3

Amend (Candidate's Br. in Opp.) at 1 (quoting Section 977 of the Election Code, 25 P.S. § 2937), O.R. Item 8.) Candidate contended that new substantive objections could not be added after the seven-day period had expired and allowing an amendment to add new objections would prevent Candidate from being able to present a defense to those objections. According to Candidate, the NRA objection is very specific, particularly after the Supreme Court's decision in *In re Major*, 248 A.3d 445, 454 (Pa. 2021), and relates to an elector using an address on a nomination petition that differs from the "address where [the elector] is duly registered and enrolled." (*Id.* at 2-3.) Had Objectors intended to challenge the signature lines because the electors were not registered in the correct party, Candidate believed such challenges should "obviously" be brought under the "Not Registered" (NR) objection. (*Id.*) Having not asserted this challenge in the Petition to Set Aside, Candidate argued Objectors had forfeited that issue.

Common pleas conducted hearings on March 21, 2023, and March 24, 2023, on the Petition to Set Aside. At the March 21, 2023 hearing, Objectors and Candidate presented argument on the Motion to Amend and request to strike signature lines that had been marked NRA where the electors were not registered in the Democratic Party. Objectors argued there is no category on the spreadsheet for "not registered in party," and the NRA should be read to include this challenge, and, if this argument was rejected, common pleas had the discretion to allow them to amend the Petition to Set Aside. (Hearing Transcript (Hr'g Tr.) March 21, 2023 at 4-8.) Candidate responded, reiterating his positions from his brief in opposition, and maintained Objectors did not provide proper notice of this challenge. (*Id.* at 9-11.) When common pleas inquired as to how many signature lines were impacted, Objectors indicated 361 total lines were marked as NRA challenges but some of

4

those lines were subject to additional challenges or had been stipulated as invalid for other reasons and posited the number as 77, while Candidate indicated it could be a different number. (*Id.* at 12-14, 24, 26, 28.) Common pleas denied the Motion to Amend and held any challenge identified on the spreadsheet as NRA, in which Objectors sought to strike based on the elector not being registered in the Democratic Party, had been waived. (*Id.* at 29.) Common pleas issued an order dated March 21, 2023, denying the Motion to Amend based on the reasoning stated in the record.[2]

At the March 24, 2023 hearing, when the parties attempted to agree on the number of signature challenges that remained unresolved, Objectors disputed Candidate's numbers, asserting the signature lines affected by the denied Motion to Amend could encompass between 76 and 192 lines. (Hr'g Tr. March 24, 2023 at 18, 23-25.) Candidate's counsel indicated during the hearing the number was closer to 200 than 77. (*Id.* at 141.) Ultimately, common pleas used 77 as the number of signature lines that would be affected by the denied Motion to Amend, although it indicated the number could be more and would have to be revisited if its decisions were reversed, and added 77 to Candidate's valid signature total. (*Id.* at 242-43.)

Also at the March 24, 2023 hearing, Objectors sought to call two circulators to whom they had issued subpoenas, one of whom was present in the courtroom and one of whom could not appear until Monday, March 27, 2023, per a physician's note, due to his being ill. (*Id.* at 34-36.) Candidate objected, asserting the circulators had been subpoenaed for improper purposes because Objectors had never claimed there was a defect in the circulator statements. (*Id.* at 33.) Objectors asserted the circulators were being called to discuss "serious discrepancies" in their pages,

---

[2] The March 21, 2023 order contains a typographical error in its reference to the date "March 20, 2023," as no hearing or argument occurred on the Motion to Amend on that date but, rather, occurred on March 21, 2023.

including an alleged dead woman's signature being forged. (*Id.*)  Common pleas noted whether the signature was forged was a criminal matter to be brought to the district attorney, that Objectors had brought a handwriting expert to ascertain which signatures were valid and which were not, the circulators' testimony was not going to assist common pleas in determining whether the signatures were valid, and Objectors had not raised any challenge to circulators' statements.  (*Id.* at 34-35.) Therefore, common pleas stated the testimony of the circulators was not relevant and quashed the subpoenas. (*Id.* at 35.)  Objectors strongly disagreed with the ruling, and common pleas stated if they still believed it to be an issue, they could re-raise it but common pleas was not "hearing witness testimony beyond the [E]xpert on what [was] in front of [it] . . .  All right?  That's it." (*Id.* at 34-36.)

The parties proceeded to go through the signature challenges, during which Objectors' handwriting expert opined regarding the validity, or not, of certain signature lines.  When common pleas determined that Candidate had 757 valid signatures, reflecting 575 lines that had been either unchallenged or conceded to be valid, 105 that common pleas found to be valid during the hearings, and 77 that were valid due to common pleas ruling on the Motion to Amend,  it denied the Petition to Set Aside.

Objectors filed a notice of appeal to this Court.  Relevant to the arguments on appeal, common pleas issued an opinion supporting its denial of the Petition to Set Aside.  Common pleas held the Nomination Petition was presumed valid and Objectors had the burden of proving that Candidate lacked the necessary signatures to appear on the ballot.  Common pleas explained the NRA challenge related to whether an elector used the address at which they were registered on the nomination petition as is required by Section 908 of the Election Code, 25 P.S. § 2868, and

6

*Major*, 248 A.3d at 454. (1925(a) Opinion at 4.) Common pleas indicated there are other challenge codes that apply to party affiliation, which were not used, and, therefore, it did not err in not expansively reading NRA to include a challenge to the party registration of the elector. Common pleas stated it did not grant the Motion to Amend because objections to nomination petitions must provide a candidate fair notice and sufficient information to mount a defense to a challenge. (*Id.* at 5 (citing *In re Nomination Petition of Bishop*, 579 A.2d 860, 862-63 (Pa. 1990)).) Fair notice is required, common pleas indicated, to "advise a candidate of the proof he or she must present at the hearing." (*Id.* (citing *In re Nomination Petition of Williams*, 625 A.2d 1279, 1282-83 (Pa. Cmwlth. 1993)).) Common pleas recognized that if an objection is made to a specific signature on a nomination petition, other challenges can be asserted during a subsequent hearing, but concluded entirely new challenges cannot be raised in a motion to amend. (*Id.*) Common pleas observed Objectors' Petition to Set Aside included several hundred NRA challenges, many of which contained additional challenges, and that, almost a week after the challenges' filing, Objectors sought to amend only those lines where the NRA challenge was the only challenge and where the elector was registered at the address used but was not a registered Democrat in the 10th District. According to common pleas, the party affiliation of an elector should have been easily identified by Objectors prior to filing the Petition to Set Aside, but Objectors claimed only to discover during the meet and confer period that their NRA challenges meant to articulate party affiliate challenges, a separate challenge that involved a different defensive response by Candidate. Common pleas further noted that "Objectors were never – even up until the last hearing day – able to identify the exact number of signatures impacted by the Motion" to Amend, with their numbers ranging from 77 to 341. (*Id.* at 6-7.)

Common pleas stated "Objectors were never able to present a concrete number of challenged signatures" but common pleas nonetheless engaged in a line-by-line review to determine if Candidate had obtained the requisite 750 valid signatures. (*Id.* at 10.) Thus, common pleas contended it properly found the party affiliation challenges waived, denied the Motion to Amend, and included 77 signatures asserted by Objectors to be affected by the Motion to Amend in Candidate's total, which ultimately exceeded the 750 needed. (*Id.* at 7.)

As for Objectors' subpoenas, common pleas indicated it quashed the subpoenas determining that the circulators' testimony was not relevant to the line-by-line challenges. Common pleas explained Objectors claimed the testimony was relevant for the first time at the March 24, 2023 hearing, but noted that no circulator challenges were filed and it found Objectors' expert witness's testimony to be the most relevant and probative to Objectors' line-by-line challenges. (*Id.* at 11.)

## II. DISCUSSION

### A. Whether common pleas erred or abused its discretion by not permitting Objectors to present challenges based on the electors' party affiliation.

On appeal, Objectors argue there are 361 signature lines at issue and common pleas erred in narrowly interpreting the NRA code, a designation that is not statutory but court-created to aid in reviewing election petition challenges, to exclude the challenge they sought to make. Objectors contend their challenge was sufficiently specific to provide Candidate notice of what was at issue, which is that there was no registered Democrat at the address used in the Nomination Petition, because they identified the page number, line, and reason for the invalidity, which is all that is required by the Election Code. *See Bishop*, 579 A.2d 860; *In re Nominating Petitions of Duffy*, 635 A.2d 111 (Pa. 1993). According to Objectors, Candidate became aware of the basis of these objections during the meet and confer period,

8

which led to the Motion to Amend. Objectors maintain common pleas should have enforced the Election Code's requirements, rather than the spreadsheet's designations, by either broadly construing the NRA code to include this challenge or allowing them to amend the Petition to Set Aside to add that challenge. Amendment, Objectors assert, was appropriate because they were seeking to add an alternative legal basis to an already objected-to signature line and limitations on a court's discretion on allowing amendments are focused on the relationship between the proposed amendment and the timely-filed objections. Here, they contend, the relationship between the proposed amendment – not a registered Democrat at the address – is sufficiently close to the timely-filed objection – the elector is not registered at the address – that common pleas abused its discretion in denying the Motion to Amend. They conclude not allowing amendment does not serve to preserve election integrity and is contrary to the Election Code's purpose. (Objectors' Brief (Br.) at 32.)

Candidate asserts there was no abuse of discretion in common pleas not allowing Objectors to convert the NRA challenge, which has a set meaning in election law parlance, into a completely different challenge after the seven-day period had expired. (Candidate's Br. at 2-4.) Candidate maintains the meaning of the NRA challenge is set – and was confirmed in *Major* – as being that the elector is registered, but not at the address used on the nomination petition, and the challenge to an elector's party affiliation is better raised as a "Not Registered" (NR) challenge. (*Id.* at 2-3.) According to Candidate, Objectors are bound by the objections they filed on the spreadsheet attached to the Petition to Set Aside and they could not raise new substantive challenges. (*Id.* at 4-5.) As in *In re Nomination Petition of Brown*, 846 A.2d 783, 788 (Pa. Cmwlth. 2004) (Friedman, J.) (single-judge op.) (*Brown*),

9

where this Court rejected an objector's attempt to convert a not registered in the district into a party affiliation challenge because the candidate lacked notice and the ability to defend against the new challenge, Candidate argues allowing the expansive reading of the NRA code or amendment to the Petition to Set Aside does not provide him with sufficient notice to defend against that new challenge. (*Id.* at 4-6.) Therefore, Candidate argues, common pleas properly denied Objectors' attempts to expand the grounds of their objections.

"In reviewing an order adjudicating challenges to a nomination petition, [the appellate] standard of review permits reversal only where the findings of fact are unsupported by substantial evidence, where there was an abuse of discretion, or where an error of law was committed." *In re Nomination Petition of Beyer*, 115 A.3d 835, 838 (Pa. 2015). The courts have long held that the Election Code must be construed liberally "so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice." *Nomination Petition of Ross*, 190 A.2d 719, 720 (Pa. 1963). Furthermore, "the purpose of the Election Code is to protect, not defeat, a citizen's vote." *Dayhoff v. Weaver*, 808 A.2d 1002, 1006 (Pa. Cmwlth. 2002). Thus, nomination petitions are presumed to be valid, and it is the objector's heavy burden to prove that a candidate's nomination petition is invalid. *In re Nomination Petition of Shimkus*, 946 A.2d 139, 141 (Pa. Cmwlth. 2008) (Cohn Jubelirer, J.) (single-judge op.). "A party alleging defects in a nominat[ion] petition has the burden of proving such defects, and, where the court is not convinced that challenged signatures are other than genuine, the challenge is to be resolved in favor of the candidate." *In re Nomination Petition of Scott*, 138 A.3d 687, 691 (Pa. Cmwlth. 2016) (Cohn Jubelirer, J.) (single-judge op.) (citation omitted).

However, the signature requirement serves as a means of preventing forgery and assuring that each elector personally signs the petition with an understanding of what the elector is signing. *In re Nomination Petition of Flaherty*, 770 A.2d 327, 332 (Pa. 2001), *abrogated in part on other grounds by In re Nomination Petition of Vodvarka*, 140 A.3d 639 (Pa. 2016), *abrogated on other grounds by statute as recognized in Major*, 248 A.3d 445. The Court is, therefore, mindful that a balance must be struck between the liberal purposes of the Election Code and "the provisions of the [E]lection [C]ode relating to nominati[on] petitions . . . [which] are necessary . . . to prevent fraud and to preserve the integrity of the election process." *Shimkus*, 946 A.2d at 154. The courts are "entrusted with the responsibility of protecting the Commonwealth's compelling interest in preserving the integrity of the election process." *In re Nomination Petition of Carlson*, 430 A.2d 1210, 1212 (Pa. Cmwlth. 1981) (Crumlish, J.) (single-judge op.). The Court must balance these competing interests to determine if common pleas erred in not allowing Objectors to assert, either as part of their initial Petition to Set Aside or as an amendment thereto, challenges to certain signature lines based on the electors' party affiliation.

The first issue is whether Objectors' Petition to Set Aside, and in particular, the designation NRA on the spreadsheet for an elector that was not a registered member of the Democratic party at the address provided on the Nomination Petition, was sufficiently specific to place Candidate on notice of the challenge. Section 977 of the Election Code states that a petition to set aside a nomination petition must "specifically" set forth the objections. 25 P.S. § 2937. This means that the allegations must state the specific grounds of invalidity so as to sufficiently advise the proposed candidate of the errors, so that the candidate is in a position to present a defense. *Duffy*, 635 A.2d at 112. Thus, objections must be specific enough to give

11

fair notice to a candidate, which means that they must provide enough information to permit a reasonable person to ascertain the substance of the claimed deficiency and the proof that must be presented at the hearing to mount a defense. *Bishop*, 579 A.2d at 863; *In re Williams*, 625 A.2d 1279 (Pa. Cmwlth. 1993). This has been interpreted as meaning the "page, line, and the reason for the invalidity[.]" *Duffy*, 635 A.2d at 112.

Objectors assert they used the NRA code on the spreadsheet to indicate a challenge based on the elector not being a registered member of the Democratic party at that address because there was no column to raise that challenge, and no instructions regarding how the party affiliation challenge should be raised. The Court recognizes that Objectors are correct.[3] However, in their Petition to Aside, Objectors did identify certain signature lines they were challenging on the basis that the elector was not registered in the Democratic Party by specifically stating in the space provided for description that the elector was a Republican, Libertarian, or Non-affiliated with a party. (Petition to Set Aside challenges to page 6, line 1 (Non-affiliated); page 19, line 1 (Republican); page 21, line 1 (Republican); page 39, lines 3-4 (Republican); page 66, lines 4 (Republican) & 16 (Libertarian); page 91, line 2 (Republican); page 124, line 1 (Republican); page 126, lines 2-3 (Republican), O.R. at Item 1 Ex. B.) From this, it appears that Objectors knew how to clearly state that an elector was not registered in the Democratic Party, and did not do so for the lines they subsequently asserted were subject to this challenge. Therefore, the Court discerns no error in common pleas' decision not to allow Objectors to construe their

---

[3] Candidate suggests the better challenge code is NR (not registered), but the Court questions whether this is any more specific than NRA because if an elector is registered in another party or is unaffiliated, they technically are registered to vote. It may be time for the courts to review the spreadsheet categories.

NRA challenges as including a challenge to the signer not being registered in the Democratic Party at that address, albeit for a slightly different reason.

This does not end the inquiry because Objectors sought, as alternative relief, to amend their reasons for challenging the lines identified in the Motion to Amend to include that the signers were not validly registered in the Democratic Party. Common pleas denied the request to amend reasoning amendments were not permitted after the seven-day challenge period had expired and the party affiliation of the electors should have been easily identified by Objectors prior to filing the Petition to Set Aside. (Hr'g Tr., March 21, 2023, at 4-13; 1925(a) Opinion at 5-6.) Objectors argue this was an abuse of discretion because the amendment was only to lines already challenged on the basis of registration status, and the original and amended challenges to registration status were closely related. While the Court appreciates common pleas' desire not to prolong the underlying proceedings, and the exigency in which these matters are heard, the Court agrees with Objectors that it was an abuse of discretion not to allow the amendment.

Section 977 of the Election Code requires, in relevant part, that petitions challenging a nomination petition be filed within seven days of the last day to file the nomination petition. 25 P.S. § 2987. Ordinarily, second or supplemental petitions to set aside may not be filed after the seven-day period expires. *Bishop*, 579 A.2d at 862. However, our courts have consistently held that, as long as an objector has challenged signatures on a nomination petition, the objector is not precluded, after the seven-day period, from seeking to advance a challenge to those signatures on other grounds in the Election Code at the hearing on a petition to set aside. *See In re Nomination Petition of Stuski*, 697 A.2d 235, 238 n.7 (Pa. 1995); *Appeal of Beynon*, 88 A.2d 789, 792 (Pa. 1952); *In re Nomination Paper of Rogers*,

13

908 A.2d 942 (Pa. Cmwlth. 2006) (Colins, J.) (single-judge op.); *In re Nomination Petition of Delle Donne*, 779 A.2d 1, 4 (Pa. Cmwlth. 2001) (Doyle, J.) (single-judge op.). "Courts have discretion to allow amendments," but that discretion is not unlimited. *In re Nomination Petition of Brown*, 992 A.2d 882, 883 (Pa. 2010) (*Roebuck*). "[T]he limits of such discretion are defined by the relationship between the attempted amendment and the timely-filed objections." *Id.*

This relationship is not as narrow as Candidate contends. In *Stuski*, the Supreme Court rejected an argument that this Court erred in considering objections to signature lines that had not been specifically raised in the petition to set aside, broadly stating that if a signature line was challenged, other challenges based on the Election Code could be asserted to that signature line at the hearing.[4] 697 A.2d at 238 n.7. *See also Rogers*, 908 A.2d at 944 (allowing an objector to amend a line initially challenged as illegible to also assert that the electors' addresses did not match their registration once the elector was identified). However, amendments that seek to challenge **new** signature lines or to assert a new non-signature line based substantive challenge, such as a challenge to a circulator's statement or the failure to file a statement of financial interests, are not permitted after the seven-day period expires. *In re Nomination Petition of Bryant*, 852 A.2d 1193, 1195 & n.4, 1196 (Pa. 2004) (sought to add a challenge based on a candidate's failure to file a statement of financial interests); *Delle Donne*, 779 A.2d at 3 (dismissing an objector's supplemental petition to set aside filed after the seven-day period expired that sought to challenge additional signatures lines). Through these cases, a principle has developed that delineates between additional challenges to an already objected-to signature line, which are subject to amendment after the seven-day period expires,

---

[4] Here, Objectors filed a written motion, though precedent appears to permit such an amendment be made orally at the hearing.

and new non-signature line challenges or attempts to add new signature lines to the petition to set aside, which cannot be amended.

In denying the Motion to Amend, common pleas did not consider the relationship between the original timely-filed objection and the proposed amendment. Rather, it held amendments to add new challenges, particularly given the number of signature lines that would be affected, were not allowed, even though they were to signature lines already subject to timely-filed objections. This is not consistent with the above legal principles. Here, Objectors sought to amend signature lines already challenged based on the signer's registration status to include another registration-based challenge. Both the timely filed first and the subsequent registration challenge relate to specific eligibility requirements for electors to sign a nomination petition set forth in Section 908 of the Election Code. 25 P.S. § 2868. Thus, this relationship unquestionably supports Objectors' requested amendment to the Petition to Set Aside.

Although Candidate asserts *Brown* supports common pleas' denial, in addition to being an outlier in the above precedent, *Brown* is not precedential and is distinguishable. In *Brown*, the candidate and objectors did not meet prior to the hearing to review the challenged signature lines, and in their joint stipulation indicated that what they observed on **the computer cards** reflected the electors were not registered in the Democratic Party. The Court stated this stipulation did not constitute evidence of the registration status of the electors at the time of signing the nomination petition, but at some point after, which is not the relevant time period. The Court further observed that the objectors' attempt to amend the petition to set aside at the hearing to include a different reason to a challenged signature line was the first notice the candidate had of the expanded dispute. In not allowing the

15

challenge, the Court was concerned that the lack of notice to the candidate created a situation where the candidate was unable to mount a defense by presenting proof that the signers were registered in the Democratic Party at the time they signed the petitions. *Brown*, 846 A.2d at 788. Here, in contrast, Candidate and Objectors met and conferred prior to the hearing during which it became apparent that the NRA challenge to signature lines may reflect that an elector was not registered in the Democratic Party at that address at the time of signing. The information relevant to this challenge, and to the defense of such challenge, such as that the elector changed their registration after signing the nomination petition, *id.*, can be found in the SURE system, to which Candidate had access during the meet and confer and at the hearing thereby allowing him to be able to mount a defense to the challenge. Because Candidate was aware of the challenge before the hearing, he also had the opportunity for the signer to present evidence at the hearing, unlike in *Brown*. Accordingly, the concerns raised in *Brown* are not present here.

Finally, the Court is cognizant of the judiciary's responsibility to "protect[] the Commonwealth's compelling interest in preserving the integrity of the election process." *Carlson*, 430 A.2d at 1212. Here, there was a signature line challenge asserted based on the signer's registration status, candidate was placed on notice of the issue before the hearing, and the record indicates the challenge related to potentially hundreds of electors signing a nomination petition. To preclude the amendment of the objection to allow another challenge to the signer's registration status is not consistent with the courts' responsibility to preserve election integrity. For this and the above reasons, the Court concludes common pleas abused its discretion in not allowing Objectors to amend their Petition to Set Aside to include

16

the registration challenge of not registered in the Democratic Party at that address to those signature lines that had already been challenged as NRA.

>*B. Whether common pleas abused its discretion in quashing Objectors' subpoenas of the circulators.*

Objectors next argue common pleas erred by quashing the duly served subpoenas, which they maintain were an attempt to obtain the circulators' testimony that would establish the signature pages they circulated were fraudulent or otherwise invalid. Objectors assert they were attempting to establish fraud, at least as to one of the signature lines. According to Objectors, the testimony of these circulators was necessary for them to meet their heavy burden of challenging certain signature lines and the circulators' testimony would have been more illuminating and reliable than their handwriting expert's testimony regarding the signatures, upon which common pleas indicated it would rely. Objectors maintain they preserved this objection by arguing against Candidate's motion to quash the subpoena after which common pleas definitively ruled on the motion despite its earlier statement that Objectors could re-raise it during the proceedings.

Candidate argues the enforcement of a subpoena is within the sound discretion of common pleas and there was no abuse of discretion because Objectors never pleaded any circulator defects or specified any such defects in their objections spreadsheet. Candidate further asserts the circulators' testimony was not necessary for the purpose sought, as Objectors' expert's testimony was sufficient to resolve the line-by-line challenges and "Objectors failed to identify any single page or line regarding these circulators to which stipulations had already been" reached. (Candidate's Br. at 6-7.)

"Whether a subpoena shall be enforced rests in the sound discretion of the court." *In re Semeraro*, 515 A.2d 880, 882 (Pa. 1986) (citation omitted). The Court

17

"will not disturb a discretionary ruling of a lower court unless the record demonstrates an abuse of the court's discretion." *Id.* To the extent Candidate's arguments could be read as claiming Objectors did not preserve the issue, the Court is not persuaded that the objection to common pleas' ruling was not preserved in the record. Pennsylvania Rule of Evidence 103(a)(2) and (b) provides "**(a) Preserving a Claim of Error.** A party may claim of error to a ruling to admit or exclude evidence only: . . . (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context" and "**(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Pa.R.E. 103(a)(2), (b). Here, Objectors provided argument opposing Candidate's challenge to the subpoenas and in support of the relevancy of that testimony, common pleas "rule[d] definitively on the record . . . at trial," *id.*, stating "[t]hat is the definitive ruling on that," quashing the subpoenas, and stating it would not hear any other witnesses' testimony at the hearing. (Hr'g Tr., March 24, 2023, at 33-35.) Objectors stated they strongly disagreed with that ruling. (*Id.* at 34.) The Court concludes these actions were sufficient to preserve a challenge to common pleas' decision quashing the subpoenas.

Common pleas found the subpoenaed circulators' testimony was not relevant because Objectors had not filed any challenges to the circulators' affidavits but were challenging specific signature lines, for which circulators' testimony was not necessary as the validity could be reviewed by Objectors' handwriting expert. (*Id.* at 33-34; 1925(a) Opinion at 11.) "Evidence is relevant if: it (a) has any tendency to make a fact more or less probable than it would be without the evidence; and

18

(b) the fact is of consequence in determining the action." Pennsylvania Rule of Evidence 401, Pa.R.E. 401. Contrary to common pleas' determination, a circulator's testimony may be relevant in a line-by-line challenge as it is the circulator who is charged with being present when all of the signatures on the page are obtained. *See, e.g.*, *Flaherty*, 770 A.2d at 336-37 (Pa. 2001) (holding that circulators must be present when electors sign a petition); *In re Nomination Petitions of Smith*, 182 A.3d 12, 25 (Pa. Cmwlth. 2018) (McCullough, J.) (single-judge op.) (circulator testified in response to a signature line challenge based on the omission of line information); *In re Payton*, 945 A.2d 279, 285-86 (Pa. Cmwlth. 2008) (Smith-Ribner, J.) (single-judge op.) (circulator called to respond to line challenges based on "bad signature"). When the genuineness of a handwritten writing is in question, it can be authenticated by the opinion of any person acquainted with the handwriting of the supposed writer or by a person who witnessed its execution, and direct evidence of a witness who saw the execution can overcome the testimony of an expert witness. *See Obici v. Third Nat'l Bank & Tr. Co. of Scranton*, 112 A.2d 94, 96 (Pa. 1955).

Here, Objectors sought to introduce the testimony of these circulators in an effort to establish that certain signature lines were invalid due to "serious discrepancies." (Hr'g Tr., March 24, 2023, at 33-34.) As the circulators whose testimony Objectors sought had to have been present when the relevant pages were signed, their testimony as to what and who they observed completing the information could make the validity of those signatures "more or less probable than it would be without the evidence." Pa.R.E. 401. This is particularly true where common pleas did not always seek or rely upon Objectors' expert testimony in ruling on signature line challenges that a circulators' testimony could have aided in determining the

line's validity, such as those claiming parts of signatures were in the hand of another. Accordingly, common pleas abused its discretion in quashing Objectors' subpoenas.

## III.   CONCLUSION

For the foregoing reasons, the Court vacates common pleas' Order, and this matter is remanded for further proceedings during which Objectors may amend the Petition to Set Aside to add, to already challenged signature lines, challenges based on the party affiliation of electors who signed the Nomination Petition and, if necessary, enforce the subpoenas against the circulators.  Such proceedings, and a decision by common pleas resulting therefrom, shall be completed no later than April 14, 2023.

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of      :
Gary Masino      :
    :
Petition of Maria Grimes Santilli and      :
Donna Bond      :    No. 319 C.D. 2023

## O R D E R

**NOW**, April 12, 2023, the Order of the Court of Common Pleas of Philadelphia County (common pleas) dismissing the Petition to Set Aside the Nomination Petition of Gary Masino (Candidate) filed by Maria Grimes Santilli and Donna Bond (Objectors) and quashing Objectors' subpoenas is **VACATED**, and this matter is **REMANDED** to common pleas for further proceedings in accordance with this opinion. Given the shortened timeframe, common pleas should complete these proceedings and render a new decision and order by April 14, 2023, from which an appeal can be taken.

Jurisdiction relinquished.

 

_____
**RENÉE COHN JUBELIRER,** President Judge